BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 430353)
Chief, Criminal Division

BENJAMIN KINGSLEY (NYBN 4758389)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6937
Fax: (415) 436-7234
benjamin.kingsley@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN FOX,<br><br>Defendant. | CASE NO. CR 16-00281 JD<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Sentencing Date: December 14, 2016<br>Sentencing Time: 10:30 a.m.<br>Court: Hon. James Donato |

**INTRODUCTION**

The government joins the recommendations of United States Probation and defendant, and requests a sentence of 78 months of imprisonment for defendant. The government has no unresolved objections to the Presentence Report, and respectfully submits this sentencing memorandum in support of its sentencing recommendation.

**BACKGROUND**

On August 11, 2016, defendant pleaded guilty to the single count of the Information, charging him with wire fraud, in violation of 18 U.S.C. § 1343. Dkt. 10.

That same day, the parties entered into a plea agreement. Dkt. 8. In the plea agreement, the parties agreed to a Sentencing Guidelines Offense Level of 28. Dkt. 8 at 7. Defendant agreed to

recommend a sentence including a term of imprisonment of no less than 78 months of custody in the Bureau of Prisons, and the government agreed to recommend a sentence including a term of imprisonment of no greater than 78 months of custody in the Bureau of Prisons. Dkt. 8 at 7, 10. Defendant also agreed to pay at least $45 million in restitution to customers of Premier Cru, and $6.5 million to lenders of Premier Cru. Dkt. 8 at 8. The parties reached no agreement regarding defendant's criminal history, an appropriate fine amount, or a term of supervised release.

Consistent with the plea agreement, Probation recommends that defendant's Offense Level is 28, PSR ¶ 35, and also recommends that defendant is in Criminal History Category I, PSR ¶ 40, resulting in a Guidelines range of 78 to 97 months of imprisonment. Probation recommends a low-end Guidelines sentence of 78 months of imprisonment, followed by three years of supervised release, restitution, and no fine. Defendant has joined Probation's recommendations, and the government joins as well.

## DISCUSSION

### A. The Defendant's Guideline Calculation

Defendant's Guidelines calculation, recommended by the parties in the plea agreement and by Probation, is set forth below:

| | | |
|---|---|---|
| a. | Base Offense Level, § 2B1.1(a)(1) | 7 |
| b. | Loss > $25 million, § 2B1.1(b)(1)(L) | +22 |
| c. | 10 or more victims, § 2B.1.1(b)(2) | +2 |
| d. | Acceptance of Responsibility, § 3E1.1 | -3 |
| e. | Adjusted offense level | 28 |

Defendant effectively ran a Ponzi scheme through his wine business, Premier Cru. PSR ¶¶ 5–17. Unlike most Ponzi schemes, defendant's financial records cannot identify the losses from defendant's fraud, because they do not show which customers received what wine, and how much that wine was worth when they received it. Additionally, because the records of Premier Cru were so poorly kept, it is impossible to determine the loss amount from the business records, either. As a result, the precise loss amount of defendant's 20-year scheme will never be known. By looking to claims filed in Premier Cru's bankruptcy proceeding as well as victim statements and claims submitted to the FBI, the United States Attorney's Office, and Probation, the government has attempted to reconstruct the loss, and estimates a loss of approximately $50 million to customers from defendant's scheme. *See* PSR ¶ 14–16.

Defendant's scheme victimized at least 4,500 customers, and likely many more, resulting in a

two-level enhancement under § 2B1.1(b)(2)(A).  PSR ¶ 19.

Given that defendant's Adjusted Offense Level is 28, and his Criminal History Category is I, the government joins Probation's recommendation of a Guidelines range of 78 to 97 months of imprisonment.

**B.    A Sentence of 78 Months Is Sufficient but Not Greater than Necessary to Comply with 18 U.S.C. § 3553(a)**

Both the nature and circumstances of defendant's offenses, and his personal history and characteristics, support a lengthy prison sentence.  Defendant ran a large Ponzi scheme for approximately two decades under the guise of a wine shop.  But defendant has fully accepted responsibility for his offenses, and provided significant cooperation to the government in the investigation of his crimes and the crimes of another individual.  For these reasons, the government recommends a low-end Guidelines sentence of 78 months of imprisonment.

*1.    Nature and Circumstances of Defendant's Offense*

Defendant's offense conduct is outlined in detail in the plea agreement and PSR, and is uncontested by the parties.  Motivated by greed and a desire to keep a failing business afloat, defendant turned a legitimate wine store into a Ponzi scheme, fraudulently selling to customers wine that he knew he could not or would not ever obtain for them.  PSR ¶¶ 6–14.  From 2010 to 2015, defendant sold to unsuspecting customers approximately $20 million of "phantom" wine for which he had created fraudulent purchase orders and entered them into Premier Cru's sales inventory system.  PSR ¶ 11.  He contracted to purchase, and then resold to customers, millions more in wine that he knew he would never be able to pay for and deliver, because his business was failing and because he embezzled some of the money as Premier Cru received it.  PSR ¶ 12.  He worked diligently to hide and maintain his scheme, telling lies to his employees, who repeated them to customers, in an attempt to stall for time when he could not deliver wine as promised, and refunding money or buying replacement wine when customers were persistent in demanding what they were owed.  PSR ¶ 13.

The government's financial analysis of defendant's personal and business accounts found that defendant's Ponzi scheme was strikingly inefficient.  Therefore, although the losses claimed by customers in bankruptcy result in an estimated loss amount of approximately $50 million (over the

lifetime of the fraud), defendant's financial gain since 2010 was much less—only approximately $5 million. Dkt. 8 at 6. Based on the financial records, the gap between gain and loss in this case is explained by the costs incurred by defendant in maintaining the fraud. The scheme required defendant to pay tens of millions of dollars for staff, inventory, expensive software, a store, and a warehouse, all to keep Premier Cru in business despite its regular losses on its legitimate wine business. PSR ¶ 14. Defendant also lost huge (though undeterminable) sums of money by underpricing the "phantom" wine that he sold to customers, and then purchasing it much later for customers, at much higher prices, when those customers demanded it. PSR ¶ 14. He further lost millions in paying partial installments of contracts for wine to European wine sellers, failing to complete payment, and then forfeiting the amounts he had already paid. PSR ¶ 14. Of the $5 million in gain from 2010 to 2015, some ($140,000 per year) was legitimate salary but much was embezzled illegitimately from the business. PSR ¶¶ 12, 57. Defendant spent the money on various personal expenses, including fancy cars and women he met online. PSR ¶ 13.

To some extent, defendant's lesser gain serves as a mitigating factor, as $5 million is not a large gain amount for this scale of financial crime. But the financial gain understates the non-financial gains that accrued to defendant, who was able to maintain his position as owner and sole boss of a prominent, high-end wine store, with the accompanying personal and psychic benefits such a position entails. It also vastly understates the financial carnage left behind when the scheme collapsed, and the impact on the many customers of Premier Cru. As demonstrated in the victim impact statements, defendant's cumulative emotional impact on the thousands of customers, who have experienced anger and anxiety, and lost their ability to trust others, is massive. PSR ¶ 19.

*2. History and Characteristics of Defendant*

Defendant's history and personal characteristics, as recounted in the PSR, are undistinguishing, and provide neither a mitigating nor aggravating factor at sentencing. PSR ¶¶ 45–56. Defendant appears to have spent much of his energy and time since 1980 running Premier Cru, first legitimately, and then fraudulently.

//

//

*3. Defendant's Cooperation and Acceptance of Responsibility*

Defendant has cooperated with both the government's investigation of Premier Cru and the investigation of another individual, Seul Ki Yum, who extorted defendant and who was charged in November 2016 by the Prosecuting Attorney's Office of King County, Washington ("the Prosecuting Attorney's Office") with extorting other individuals in the Seattle area. Defendant's acceptance of responsibility and cooperation, and its relevance to his sentence, is discussed below.

By approximately December 2015, defendant's Ponzi scheme had collapsed, and defendant informed his employees that Premier Cru would be winding down. In January 2016, Premier Cru filed for bankruptcy. In February 2016, counsel for defendant contacted government counsel, and ultimately informed government counsel that defendant wished to cooperate in the government's investigation of Premier Cru. Defendant met with the government on March 28, 2016; April 28, 2016; and May 11, 2016, providing truthful and detailed information about, and fully accepted responsibility for, his scheme. PSR ¶ 23. During the May 11 interview, conducted at Premier Cru, defendant used the Premier Cru computer system to voluntarily identify many specific instances of wine that he sold without ever having purchased in advance. PSR ¶ 23. In addition, defendant waived indictment and, despite being a white-collar defendant of the type normally granted bail in advance of trial, voluntarily agreed to surrender to the custody of the United States Marshals shortly after his arraignment. Dkt. 7.

Through this cooperation, the government was easily able to identify many instances in which defendant entered fraudulent purchase orders into Premier Cru's computer system. PSR ¶ 23. Defendant's cooperation in the investigation of his own case was significant and far beyond what is typical for fraud cases, saved the government the substantial investigative time and resources, and allowed for a prompt resolution of his case.

Second, the government's financial investigation identified one particular individual, Seul Ki Yum, who received over $200,000 of fraud proceeds from defendant through PayPal. During his initial interview with the government, on March 28, defendant informed the government that he had found Yum online and originally paid her a small amount of money, anticipating sex. According to defendant, Yum eventually began extorting him, threatening to tell defendant's wife and family if defendant did not pay thousands of dollars to her regularly. Fox provided many emails to the government corroborating

this extortion, and participated in a recorded call with Yum on July 25, 2016, in which defendant confessed his crimes to her and in which she continued to attempt to extort defendant for more money.

Yum was already separately under investigation by local law enforcement in Seattle for engaging in similar conduct with multiple other individuals. As a result, the government provided evidence gathered from defendant and its own financial investigation to law enforcement in Seattle. On November 22, 2016, Yum was charged by the Prosecuting Attorney's Office in Seattle with four counts of extortion, for extorting four individuals other than defendant. *See State v. Seul Ki Yum*, No. 16-1-03057-9 SEA (Superior Ct. of Wash., King Cty.). The case is pending, and the Prosecuting Attorney's Office considers defendant to be a cooperating victim. Yum's arraignment is scheduled for December 6, 2016.

Though it originated in defendant's wholly unsympathetic conduct of using victim money to pay for sex, defendant's cooperation in the prosecution of Yum in Seattle has been meaningful. As that cooperation occurred in advance of the entry of the plea agreement on August 11, this cooperation is incorporated into the recommended sentence included in the plea agreement of 78 months, and the government is not making a further motion under § 5K1.1 at this time.

In sum, defendant's cooperation in, and pre-indictment resolution of, the investigation of his own offense, and his cooperation in the investigation of Yum's extortion of him (and others), warrant credit under § 3553. Defendant's cooperation significantly distinguishes him from other Ponzi schemers or wine fraudsters who deny their crimes through trial. *See, e.g.*, *United States v. Kurniawan*, No. 12-cr-00376 RMB (S.D.N.Y.), dkt. 122 (government's sentencing memorandum); dkt. 166 (sentencing transcript) (defendant received mid-range Guidelines sentence of 120 months, with Guidelines of 108 to 135 months, following a lengthy investigation and contested jury trial for selling or attempting to sell, by the government's calculation, over $30 million in fake wine).

*4. Summary*

At bottom, the Sentencing Guidelines fairly approximate defendant's culpability in this case. The loss from defendant's scheme is massive, and its impact on thousands of victims is tremendous. The Guidelines appropriately account for the overall loss amount suffered by defendant's victims. Since the 2015 Amendments to § 2B1.1 eliminated increased further enhancements for total numbers of

victims above 50 and 250, the Guidelines do not account for the sheer number of people defendant victimized as part of his scheme. On the other hand, the Guidelines also do not account for the unique nature of defendant's cooperation and acceptance of responsibility in this case, which go far beyond the normal level of acceptance of responsibility and cooperation in fraud cases.

**C. Restitution**

The PSR has identified the restitution amount as $51,640,825.84. PSR ¶ 16. Since the government provided that number to Probation, the government has received, and anticipates continuing to receive until the date of sentencing, information on losses that require adjustments to the precise restitution amounts per victim it will recommend to the Court. Additionally, the government has been informed that a sale of the real property owned by Premier Cru is anticipated to close by January 10, 2017. This property is collateral for the loans made by some of Premier Cru's lenders for whom defendant agreed to pay restitution as part of the plea agreement. If the sale closes as expected, some lenders are expected to receive satisfaction on some or all of the amount owed to them by defendant. Should that occur, the restitution amounts will need to be modified to account for that return on collateral.

Under 18 U.S.C. § 3664(d)(5), "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." The government respectfully informs the Court that the losses will not likely be fully ascertainable by a date that is 10 days prior to sentencing, and requests that the Court set a date within 90 days of sentencing for a final determination of restitution. The government anticipates that the parties will be able to stipulate to that determination in advance of any hearing.

//

//

//

//

//

//

**CONCLUSION**

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court impose a low-end Guidelines sentence of 78 months of imprisonment, three years of supervised release, restitution, a $100 special assessments, and no fine.

Dated: November 30, 2016

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

_____/s/___________________
BENJAMIN KINGSLEY
Assistant United States Attorney